# United States District Court
## Western District of Virginia
### Harrisonburg Division

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| | ) | |
| **JO ELLA HOY,** | ) | Civil No.: 5:12cv00070 |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **CAROLYN W. COLVIN,** [1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | By: Hon. James G. Welsh |
| *Defendant,* | ) | U. S. Magistrate Judge |
| _____ | ) | |

This is the second civil action instituted in this court by Jo Ella Hoy ("Ms. Hoy" or "the plaintiff"), challenging a final administrative determination of the Commissioner of the Social Security Administration ("the agency") denying her claim of entitlement to a period of disability insurance benefits ("DIB") and/or for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423, and 42 U.S.C. §§ 1381 *et sec.*, respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

Along with the Commissioner's Answer (Docket #9) to the plaintiff's Complaint (Docket #3), the Commissioner has filed a certified copy of the Administrative Record ("R.") (Docket

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013; pursuant to Rule 25(d), Fed. R. Civ. P., she is substituted for Michael J. Astrue as the defendant in this suit. No action is needed to continue it by reason of the last sentence of 42 U.S.C. § 405(g).

#11), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By standing order this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment; each has filed a supporting memorandum of points and authorities, and by telephone conference the views of counsel were heard on May 6, 2013. (Docket #13-16, 18).

I.    **Background and ALJ Decision**

Following a written administrative law judge ("ALJ") decision dated January 24, 2008 denying her disability applications [2] and her unsuccessful effort to obtain Appeals Council review, the plaintiff timely filed for court review of the agency's adverse determination. 42 U.S.C. § 405(g). Based on a thorough review of the administrative record, this court concluded that the ALJ erred by failing to give the required decisional weight to the opinions of treating health care professionals, specifically those of Timothy Kane, MD, and Tina Judge, FNP. (R.537, 538-548). It was further concluded that the ALJ's adverse disability determination was not supported by substantial evidence, that the plaintiff was in fact disabled within the meaning of the Act, and that the Commissioner's final decision should be reversed and the case remanded for further consideration consistent with the court's opinion. (*Id.*).

---

[2]   In her April 19, 2006 filing, the plaintiff alleged a disability beginning May 17, 2002 due to a "severe depression' and "bipolar" condition. (R.139). The ALJ's written decision denying this claim is dated January 24, 2008. (R.23, 34, 520-532). *Inter alia,* the ALJ therein concluded that the doctrine of *res judicata* applied to her claim through June 22, 2005, the date of a final and binding adverse ALJ decision of a claim filed by her on May 7, 2003. (R.23, 521).

2

Side-stepping this court's disability finding, on remand the ALJ scheduled the testimony of Robert Muller, PhD. This non-examining, non-treating psychologist testified that the medical record demonstrated the plaintiff's mental health condition to be of listing-level severity as of May 2002. (R.484-486). He further testified that "in about February [20]08" the plaintiff's moods were "starting to get … better," and that her condition was no longer of listing-level severity; however, the medical record was "not specific" concerning the extent to which her ongoing mental health issues would interfere with her ability to work on a regular and sustained basis. (R.486-487).

Irrespective of the indefinite nature of this testimony, irrespective of the plaintiff's testimony concerning her ongoing functional problems and limitations related to her condition (R.493-504), irrespective of the medical evidence documenting her enduring mental health issues (R.410-421, 693-706, 710, 716, 720-721, 727, 732-735) and irrespective of the mood swings that are an inherent part of a bipolar disorder, [3] the ALJ found the plaintiff's mental disorder to be both non-severe and non-disabling as of the end of February 2008. (R.462-466).

In making this determination, the ALJ began his sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520 and 416.920 and found that the plaintiff had not engaged in substantial gainful activity since June 23, 2005, one day after an earlier adjudicated decision. (R.458). [4] At

---

[3] A mood disorder "in which major depressive episodes and manic or hypomanic episodes occur." *Dorland's Illustrated Medical Dictionary,* 220 (32$^{nd}$ed. 2012).

[4] For a Title II (DIB) claim, step one of the continuing disability review evaluation process is a determination as to whether the claimant is engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1594(f)(1).

the second sequential step the ALJ concluded as of June 23, 2005 the plaintiff's bipolar disorder was both a severe impairment and of listing level severity. (R.458-461). [5]

Then, based on reported changes (improvements) in her symptoms, [6] the ALJ concluded that as of February 29, 2008 the plaintiff's condition was no longer of listing-level severity and that she was thereafter only "mildly" [7] limited in the areas of daily living activities, social functioning, and concentration, persistence and pace. (R.63-66). 20 C.F.R. §§ 404.152(d)(1) and 416.920a(d)(1). On the basis of these step three findings, at his next decisional step the ALJ deemed the plaintiff's mental condition to be no longer *severe* [8] and no longer to limit significantly her ability to perform "basic work activities." [9] (R.462-466).

With the entry of the ALJ's written decision, the plaintiff once again unsuccessfully sought Appeals Counsel review and for a second time filed for court review of the ALJ's unfavorable decision.

---

[5] At step two under Title II (step one under Title XVI (SSI)), the issue is whether the claimant has an impairment or combination of impairments that meet or medically equal a listing. *See* 20 C.F.R. §§404.1594(f)(2) and 416.994(b)(5)(i)

[6] At step three under Title II (step two under Title XVI), the ALJ must determine if there has been medical improvement. *See* 20 C.F.R. §§ 404.1594(f)(3) and 416.994(b)(5)(ii).

[7] *See* 20 C.F.R. Pt. 404, Subpart P, Appx. 1 § 12.00(C).

[8] Quoting *Brady v. Heckler*, 724 F.2$^d$ 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience; *Bowen v. Yuckert*, 482 U.S. 137, 180-182 (1987) (the severity evaluation is a *de minimis* "threshold screening standard to eliminate frivolous claims at an early stage in the process"); *see also Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230 (4th Cir. 2011).

[9] 20 C.F.R. § 404.1521(b) defines "basic work activities" as "the abilities and aptitudes necessary to do most jobs."

## II. Summary Recommendation

The fundamental issue on appeal is whether the ALJ's non-disability determination as of February 29, 2008 is supported by substantial evidence. It is not. Based on a thorough review of the administrative record and for the reasons herein set forth, it is **RECOMMENDED** that the plaintiff's motion for summary judgment be **GRANTED**, the Commissioner's motion for summary judgment be **DENIED**, that the final decision of the Commissioner be **REVERSED,** that this matter be **REMANDED** to the Commissioner **pursuant to "sentence four"** for calculation and payment of benefits, and that this matter be **DISMISSED** from the court's active docket.

With the **remand** of this case and resulting award of benefits, pursuant herewith, the plaintiff's counsel should be granted an extension of time pursuant to Rule 54(d)(2)(B) which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the agency; provided, however, any such extension of time **would not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

## III. Standard of Review

Although court review of the Commissioner's decision terminating the plaintiff's benefits is limited, *Rice v. Shalala*, 1993 U.S. App. LEXIS 20838, *4 (4th Cir. Aug. 16, 1993), the court must review the entire record to determine whether the Commissioner has applied the correct

legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990). If these findings are found to be supported by substantial evidence, they are "conclusive," 20 C.F.R. § 405(g), and the court should not re-weigh conflicting evidence, make credibility determinations, substitute its judgment for that of the Commissioner, or try the case *de novo*. *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966); *Seacrist v. Weinberger*, 538 F.2$^d$ 1054, 1056-1057 (4th Cir. 1976). The substantial evidence standard prescribed by § 405(g) has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted), or "evidence which…consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2$^d$ 987, 989 (4th Cir. 1984). Consequently, "[t]he language of 43 U.S.C. § 405(g)…requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock v. Richardson*, 483 F.2$^d$ 773, 775 (4th Cir. 1972). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2$^d$ 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

**IV.    Facts**

6

Given the ALJ's acknowledgment in his most recent decision that the plaintiff's long-standing bipolar condition was of disabling severity and had been disabling for a considerable period of time, Ms. Hoy's medical history before January 2008 does not need to be restated in any detail herein, it is sufficient to note (as the medical witness did) that her medical records show "she has been dealing with [severe depression] since the mid [19]90s," and they further showed that her condition "was of listing-level [severity] between May [20]02 and February 2008." (R.485, 487). It is, therefore, not surprising that the plaintiff described 2005 to 2008 as her "worst time period." (R.495). It was a time, when she spent most of her time in bed, when she "could not function…, when she felt "disconnected from everything," and when she felt "like… plugging in something…but then [being] unplug[ed from] it." (R.494-495).

Throughout the period between March 2003 and the end of August 2008 the plaintiff was regularly seen and treated for her mental health issues by the psychiatrists (Drs. Michael Cesna and Timothy Kane) and support staff (primarily FNP Tina Judge) at Comprehensive Health Systems. (R.304-368, 384-408, 410-448, 768-769).

Nurse Judge's treatment note for December 11, 2007 records that the plaintiff at that time was "unsure" about her mood and that her somatic symptoms (energy, concentration and anhedonia [10]) were each only "fair." (R.434). Three weeks later, the plaintiff reported "some improvement" in her overall mood; however, her somatic symptoms were unchanged. (R.432).

---

[10] *Anhedonia* is the "feeling of pleasure in acts that normally give pleasure." *Dorland's Illustrated Medical Dictionary* 91 (32nd ed. 2012).

7

Over the next seven months of 2008, the plaintiff was seen for mental health treatment on eleven separate occasions, once by a psychologist and monthly or more often by Nurse Judge, her primary treating mental health professional. When seen by a clinical psychologist at the end of March 2008 as part of an effort "to facilitate treatment options," an Axis I diagnosis of a recurrent major depressive disorder was recorded; her level of functioning at that time was assessed at 60 on the GAF scale; [11] her medication regime at that time noted to include an antidepressant (Effexor XR), a psychostimulant (Adderall), a depression stimulant (Deplin) and an antipsychotic (Risperdol), as well as sleep assisting and synthetic thyroid medications; formal psychological testing was recommended. (R.422-423). Throughout this seven-month period Nurse Judge found the plaintiff consistently to exhibit only a "fair" energy level and a "fair" ability to concentrate; she found the plaintiff during this period to exhibit no anhedonia; she found the plaintiff's mood to be "stressed" on January 30, 2008 and to range subsequently from "good," to "ok," to "mostly good" and to "fair" at the time she last saw the plaintiff on August 5, 2008. (R.410-421, 424-429).

Unfortunately, when her husband was laid-off from his job; the family lost their medical insurance, and Mrs. Hoy went through a "down phase" without any treatment until she turned in March 2009 to the Augusta Free Clinic. (R.495). Over the next two and one-half years, the Free Clinic's progress notes and medication records document her treatment for a variety of transient and chronic medical issues, including her mental health issues for which she was seen by a clinic psychiatrist on a more or less quarterly basis. (R.670-677, 680-685, 687-689, 693, 695-699, 706,

---

11  The GAF is a numeric scale ranging from zero to one hundred used to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 32 (4th ed. 1994) ("DSM-IV"). A GAF score of 51 to 60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.*

710, 713, 715, 718, 720-721, 724, 727-731, 733-765, 768-769, 771-783). Her mental health condition was generally described as a "bipolar disorder" or as "depression," and it was treated pharmacologically with Zoloft. (*E.g*., R.680, 728, 733, 768, 780). As the medical witness noted in his testimony, these Free Clinic records contain "scant information" and are of such a nature that one "could only surmise" about their consistency with the plaintiff's prior mental health records. (R. 489-490).

V.  Discussion

A.

In order to be considered mentally capable of performing any type of work, it is axiomatic that the individual must be able to cope with certain work-related demands, including "the need to be punctual and to attend work on a regular basis, the ability to accept supervision and the capacity to remain in the work place for an entire day." *Irlanda-Ortiz v. Secretary, HHS*, 955 F.2$^d$ 765, 770 (1st Cir. 1991). For a claimant to be considered capable of performing any type of work, it is similarly axiomatic that the ALJ is required to consider the combined effect of all a claimant's impairments; mental and physical, exertional and non-exertional, severe and non-severe. *See* 42 U.S.C. § 423(d)(2)(B); *Hines v. Bowen*, 872 F.2$^d$ 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.").

Although the ALJ in the case now before the court summarized the medical record in considerable detail, he failed to explain adequately his evaluation of the plaintiff's combined impairments. Likewise, he failed to indicate explicitly the weight given to relevant evidence. *See*

9

*Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985); *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987); *Gordon v. Schweiker*, 725 F.2d 231, 235-236 (4th Cir. 1984).

In making his determination that the plaintiff's condition medically improved to the degree that she was capable of basic work activity on a regular and sustained basis as of February 29, 2008, the ALJ explicitly gave "great weight" to the opinion of the medical witness that he did not see a severe problem that would cause more than mild problems after the end of February 2008. (R.464). This witness' testimony, however, was far more equivocal than suggested by the ALJ in his decision. Essentially, this non-treating, non-examining, medical witness stated only that after the end of January 2008 "[his] sense [was] that [the plaintiff] would have more mild difficulties" in the areas of staying on task, meeting attendance requirements and capacity to work. (R.487-488). Moreover, the indefinite and speculative nature this witness' testimony is further evidenced by his acknowledgement that the Free Clinic records offer only "scant information" and a basis only to "surmise" as to the status of the plaintiff's condition. (R.490). In other words, the ALJ invited this witness to engage in guesswork and then made this witness's conjecture the basis for his finding that the plaintiff had the ability to work. Conjecture and speculation are simply not substantial evidence. *See e.g., Roberts v. Barnhart,* 36 Fed. Appx. 416, 419 (10th Cir. 2002).

The ALJ's finding that as of January 29, 2008 the plaintiff was able to perform basic work activities is also fatally defective due to his failure to explain explicitly the basis for his rejection of significant relevant evidence in the record concerning the plaintiff's various

functional limitations. This includes, among other evidence in the record, her age, [12] the exertional and non-exertional requirements of her past work, [13] the plaintiff's significant and persistent somatic symptoms (energy and concentration) and mood swings recorded by Nurse Judge during the first eight months of 2008 (R.410-421, 424-429), her significant medication regimen and the "moderate" level of functional difficulties noted by the clinical psychologist at the time of his mental status assessment on March 21, 2008 (R.422-423). Unexplained, this evidence cannot yield a substantial evidentiary basis for the ALJ's finding that the plaintiff's long-standing mental health condition suddenly ceased being *severe* and thereafter only minimally limited her ability to do basic work activities.

**B.**

The absence of a substantial evidentiary basis for the ALJ's non-disability finding is also evident from a review of his credibility determination. Not only must it constitute more than a conclusory statement that the plaintiff's allegations are not credible, but it must contain specific reasons for the finding and must "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling ("SSR") 96-7p.

---

[12] At nearly fifty-three years of age (R.559) the plaintiff is classified as a "person closely approaching advanced age." If a person is closely approaching advanced age (age 50-54), the agency will consider the individual's age along with any severe impairment(s) and any limited work experience which may seriously affect the individual's ability to adjust to other work. 20 C.F.R. §§ 404.1563(d) and 416.920(c).

[13] As performed her job as a distribution worker was unskilled, exertionally medium, and would require attention, persistence and concentration. (R.575-577). Although an ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments and there is also substantial evidence that the claimant is now able to engage in substantial gainful activity, to make such a disability termination determination, *inter alia* the ALJ must not only determine whether the claimant has experienced a decrease in medical severity and whether the claimant has experienced medical improvement related to her ability to work, but the ALJ must also determine whether the claimant can still do work performed in the past and if not he must further determine whether the claimant can perform other work that exists in the national economy. *See Salvetti v. Astrue,* 2011 U.S. Dist. LEXIS 147191, *14-17 (DMd. Dec. 21, 2011).

11

Although the ALJ found that the plaintiff's bipolar disorder "could reasonably be expected to produce her alleged symptoms," he found her testimony concerning the intensity, persistence and limiting effects of these symptoms was "not credible beginning February 29, 2008" to the extent it was "inconsistent with [his] finding that [she] had no severe impairment …. (R.464). In other words, he found Ms. Hoy's testimony credible during the period he concluded that she was disabled and then not credible on the basis of his own conclusion that she was able to perform basic work activities as of January 29, 2008.

By predicating his credibility determination on functional ability finding, the ALJ assumed that which he wished to prove — the logical fallacy of *petitio principii*. By resorting to this form of circular reasoning, the ALJ's credibility finding is simply an assertion by him that his functional capacity assessment is a true statement and any contrary statement is, therefore, untrue. Manifestly, an ALJ's credibility statement cannot be used to prove itself. Its premise lacks a source of reason for its truth is different from that of the conclusion. Thus premised on a logical fallacy, the conclusion is not based on substantial evidence, [14] and the plaintiff's testimony, therefore, should have been given full credence. [15]

---

[14] *See Edelson v. Soricelli*, 610 F.2$^d$ 131, 133 (3rd Cir. 1979) ("The essence of our legal tradition is that the beginning point of legal reasoning, or, stated syllogistically, the major premise must not be a statement of the suggested conclusion because to engage in this practice is to indulge in *petitio principia*, more colloquially referred to as 'begging the question.' By whatever label, it is a process of circular reasoning that fails to prove the initial thesis propounded and uses the argued thesis as proof of itself.").

[15] *Inter alia* the plaintiff testified that after the family lost its insurance coverage in 2008 she went through an extended "down phase" before finally seeking medical help through the local free clinic; the prescribed medication (Zoloft and trazodone) from the free clinic took three or four months before she had "some lift, and her condition makes coping a day-to-day proposition. "I don't know what tomorrow will bring. Some days…I can slowly function…. Some days … it's like my motor skills won't go," and some days "I do very well." (R.494-500).

**C.**

"In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the … proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2$^d$ 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary, HHS,* 17 F.3$^d$ 171, 176 (6th Cir. 1994).

Since the plaintiff's appeal involves no new and material evidence requiring a remand pursuant to "sentence six" of 42 U.S.C. § 405(g) and involves no unresolved factual issue or need for further development of the record requiring a "sentence four" remand under the same statutory section, a second remand of this case is unnecessary. *See Wilkins v. Sec'y Dept. Health & Human Servs.*, 953 F.2$^d$ 93, 96 n.3 (4th Cir. 1991); *Krishnan v. Barnhart*, 328 F.3$^d$ 685, 691 (DC Cir. 2003) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). Thus the appropriate disposition of this case is that it be reversed and remanded under sentence four of 42 U.S.C. § 405(g) solely for the calculation and continued payment of benefits on and after January 29, 2008.

**D.**

In her brief, the plaintiff argues that ALJ also committed reversible error by failing to comply with the agency's Hearings, Appeals and Litigation Law Manual ("HALLEX"). It is her contention that following the court's previous remand of the plaintiff's case the ALJ erred by holding a hearing and issuing a new decision, because HALLEX § I-2-8-18(A) specifically

directs the ALJ "not to follow" that procedure, "if the court has held that the claimant is in fact disabled and has remanded the case to the Commissioner to determine the onset of disability…."

Without question the court's prior remand contained a finding of disability and remanded the case for the express purpose of determining a disability onset date. Thus, on its face the HALLEX provision cited by the plaintiff would appear to support this assignment of error; however, the case law is far from clear that HALLEX imposes binding procedural or substantive requirements either on an ALJ or the agency, and the Fourth Circuit has not addressed this issue. *See e.g.*, *DeChirico v. Callahan*, 134 F.3$^d$ 1177, 1184 (5th Cir. 1998) (HALLEX procedures bind the agency); *Lockwood v. Commissioner*, 616 F.3$^d$ 1068, 1072 (9th Cir. 2010) (HALLEX is an internal manual that lacks the force of law)

Since a second remand is not required in this case, it is not necessary for the court to reach this issue. *See e.g.*, *Stewart v. Heckler*, 599 F. Supp. 298, 300-301 (SDNY. 1984) (Since no remand was required, there was no need for the court to reach the possibility of the claimant's medical improvement being twice litigated under the same standard).

**V.      Proposed Findings of Fact**

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. Substantial evidence in the record does not support the ALJ's finding that from January 20, 2008 through the date of the ALJ's decision the plaintiff was not disabled within the meaning of the Act;

2. The ALJ's finding that as of January 29, 2008 the plaintiff had no impairment or combination of impairments that significantly limited or was expected to limit significantly the plaintiff's ability to perform basic work-related activities is not supported by substantial evidence;

3. ;The ALJ's finding that as of January 29, 2008 the plaintiff had no *severe* impairment or combination of impairments is not supported by substantial evidence;

4. The ALJ's finding that as of January 29, 2008 the plaintiff's mental health condition was no more than a "mild" limitation on her functional abilities is not supported by substantial evidence;

5. The ALJ's finding that the plaintiff's testimony was not credible as of January 29, 2008 to the extent that it was inconsistent with his finding that as of that date the plaintiff had no severe impairment or combination of impairments is not supported by substantial evidence;

6. The record adequately establishes plaintiff's disability entitlement and to the continuation of benefits effective February 29, 2009, and the ALJ's contrary finding is not supported by substantial evidence;

7. Outright reversal and remand simply for the calculation and award of benefits is appropriate in this case because additional fact-finding is not necessary in order to establish either a disability onset date or a continuation of disability date; and

8. The final decision of the Commissioner should be reversed and the case remanded simply for the calculation and award of benefits.

## VI. Directions to Clerk

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: this 19th day of June 2013.

/s/ *James G. Welsh*
United States Magistrate Judge