IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JO ELLA HOY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. 5:12cv070 |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, | ) By:  Michael F. Urbanski |
| Commissioner of Social Security, | )     United States District Judge |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION**

This social security disability appeal is before the court for review of the report and recommendation issued in this case by the magistrate judge on June 19, 2013.  The magistrate judge concludes that the determination of the administrative law judge ("ALJ") that plaintiff's disability ended February 29, 2008 is not supported by substantial evidence and that the record establishes plaintiff's entitlement to the continuation of disability benefits as of February 29, 2008.  The magistrate judge recommends that this case be reversed and remanded for calculation and payment of benefits.  The court agrees with the magistrate judge that the ALJ's determination that plaintiff no longer had a severe impairment as of February 29, 2008 is not supported by substantial evidence.  However, the court finds it necessary to remand this case for a consultative evaluation by a psychiatrist.  As such, the magistrate judge's recommendation will be adopted in part and rejected in part, and this case will be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent herewith.

I.

This matter was referred to the magistrate judge for proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties filed cross motions for summary judgment and supporting memoranda and the magistrate judge issued his report and recommendation on June 19, 2013. Under 28 U.S.C. § 636(b)(1), the "court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Federal Rule of Civil Procedure 72(b) provides the parties with an opportunity to file written objections to the proposed findings and recommendations, but neither party filed objections in this case. Rule 72(b)(3) provides that the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." While the text of the rule is silent as to the obligation of the court if no objection is made, the advisory committee notes that "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing Campbell v. United States Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974)). In Thomas v. Arn, 474 U.S. 140 (1985), the Supreme Court had occasion to address the issue, and stated as follows:

> The district judge has jurisdiction over the case at all times. He retains full authority to decide whether to refer a case to the magistrate, to review the magistrate's report, and to enter judgment. Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

474 U.S. at 154. Thus, even absent an objection, the court retains the ability to review sua sponte a magistrate judge's report and recommendation. The court believes that the particular

2

facts of this case present an appropriate occasion to review the magistrate judge's report and recommendation notwithstanding the absence of an objection.

## II.

Plaintiff filed applications for disability insurance benefits (DIB) and supplemental security benefits (SSI) in May 2003. In a decision dated June 22, 2005, an ALJ determined that plaintiff was not disabled under the Social Security Act ("the Act"). The Appeals Council declined her request for review. Plaintiff did not appeal. Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff subsequently filed new applications for DIB and SSI benefits, alleging the same onset date as in the prior applications, May 17, 2002. Her applications were denied initially and upon reconsideration. Because the period through June 22, 2005 had been fully adjudicated, the ALJ gave the findings pertaining to this period res judicata effect and considered only the unadjudicated period, from June 23, 2005 through the date of the ALJ's decision. In a decision dated January 24, 2008, the ALJ determined that plaintiff was not disabled under the Act. The Appeals Council denied plaintiff's request for review, and plaintiff appealed. In a report and recommendation dated June 9, 2011, the magistrate judge concluded that the evidence established plaintiff was disabled under the Act and recommended that this matter be remanded to the Commissioner for determination of an appropriate onset date. The presiding district judge adopted the report and recommendation by Order dated July 29, 2011.

On remand, the ALJ held a hearing, at which a psychologist, Dr. Robert Muller, testified as a medical expert. The ALJ determined that from June 23, 2005 through February 28, 2008, the plaintiff's bipolar disorder was a severe impairment and the severity of that impairment met the criteria of Listing 12.04. Thus, the ALJ concluded that plaintiff was disabled under the Act

through February 28, 2008.  The ALJ determined, however, that plaintiff did not have an impairment or combination of impairments of listing-level severity beginning February 29, 2008, that medical improvement occurred as of that date, and that plaintiff's disability ended as of that date.  The Appeals Council denied review, and plaintiff once again appealed.

### III.

In his decision, the ALJ gave great weight to the opinions of treating providers Tina Judge, FNP, and Dr. Timothy Kane, who opined in 2006 that plaintiff met Listing 12.04.  Dr. Robert Muller, the testifying medical expert, supported the assessments of Tina Judge and Dr. Kane, opining that plaintiff met Listing 12.04 between 2002 and February 29, 2008.  The ALJ also gave significant weight to the opinion of the consultative psychologist, Dr. Joseph Cianciolo, who opined in 2006 that plaintiff's "ability to maintain regular attendance in the workplace, perform work activities on a consistent basis, and completing a normal workday or workweek without interruption appears to be markedly impaired as a function of depressive illness."  (R. 282.)

As to the period beginning February 29, 2008, the medical expert testified that plaintiff:

> [T]urns the corner in about February '08 and then was starting to get moods better.  [Exhibit] 17F is a note by Dr. Reed 08/08.  Here she is given the diagnosis of major depressive disorder, GAF of 60 at this point, which would be considered more in the mild range.[1]  If we go through June and August, her mood is fair.  And then there are some notes that were missing for a couple of years it looks like.  And, then we get to 18F, 04/09 she is complaining of insomnia, but no significant signs of depression.  In October, she is feeling good and January 2010 she stopped taking her psychiatric medications.  And then in—It looks like, in December 2010, she is

---

[1] The court notes that a GAF of 60 is at the upper end of the moderate range of symptoms.  The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev.2000) (hereinafter "DSM–IV–TR").  A GAF of 51–60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id.

> back on some of the medications, and then we have some notes in April and May, where she is still depressed and difficulties with focusing, but I am not s[eeing] severe problems she was having before.

(R. 487.) On cross-examination by plaintiff's counsel, Dr. Muller acknowledged that the time period at issue was "about the time [plaintiff] went into the Augusta free clinic" and that "there is a vast difference in the quantity and quality of information available in the [free clinic] notes." (R. 488-89.) Based on the fact that there was "scant information" in the free clinic records, Dr. Muller testified he:

> [C]ould only surmise, from the other information that [he] had, that it was consistent with the information leading up to it in post records for that. Because there is nothing of significance in the record, so leading up to that, she was doing okay and then after that, there are some notes where she is doing okay.

(R. 490.) Although he said he read the free clinic treatment notes to mean plaintiff was "a fairly stable person . . . . She is feeling okay. She is having some problems sleeping, maybe a little bit hypomanic and that's affecting her sleep. But . . . not . . . really having significant psychiatric difficulties," Dr. Muller acknowledged these treatment notes from the free clinic "are very vague, obviously." (R. 493.)

Indeed, the treatment notes from the Augusta free clinic are vague, and much of the information they contain is illegible. Plaintiff began treating at the Augusta free clinic in the spring of 2009. The treatment notes document various transient medical issues plaintiff was experiencing. With respect to her mental health, there are some references in the 2009 and 2010 notes to plaintiff feeling good and not needing her medication. (See R. 710, 713, 715, 716.) There plainly are, however, references throughout the free clinic treatment notes to depression (see, e.g., R. 672, 681, 685, 687, 688, 720, 721, 777) and bipolar disorder (R. 680), and to

5

plaintiff's use of zoloft and trazadone to manage those conditions. (See, e.g., R. 671, 675, 676, 677, 682, 685, 688.)

Plaintiff testified that the period from 2005 to 2008 was "the worst time period that [she] spent totally in bed." (R. 493.) As for the period following February 2008, plaintiff stated:

> The reason I did not return back to Tina Judge and Dr. Kane's office was my husband was laid off from work and we lost our medical insurance. He, then, got a job, but in order to put me on, because of my problem, it would cost, like, $946.00 a month for health care and there was no way that he could do that. So, I suffered—I was in a down phase of staying in bed, not bathing, not until I said, "I need to get some help." So, all I could think of was to go to the Augusta free clinic.

(R. 495.) She noted that when she was off medication for a period of time, "it didn't work for so long," and she realized she needed to stay on medication. (R. 498.) When asked whether that medication helped her cope with her depression, plaintiff responded:

> Your Honor, it's like, I don't know what tomorrow may bring. Some days, I am like, I can get out of the bed and I can slowly function. Some days I may get out of the bed and watch T.V. all day. Some days are just like I cannot—It's like my motor skills won't go.

(R. 499-500.) She confirmed that she reported all of this to her doctors at the free clinic. (R. 500.) The free clinic notes, however, reveal very little.

Aside from the few treatment notes from Tina Judge between March and August 2008, the sole basis for the ALJ's determination that plaintiff no longer had a severe impairment and was not disabled as of February 29, 2008 is the information contained in the Augusta free clinic records. In reaching his decision, the ALJ relied on the testimony of Dr. Muller. But Dr. Muller did not examine plaintiff. Rather, Dr. Muller reviewed these same sparse records and from them, opined that plaintiff was no longer disabled as of February 29, 2008. On this record, given the lack of legibility and detail in the Augusta free clinic treatment notes, the undersigned agrees

6

with the magistrate judge that substantial evidence does not support the ALJ's finding "that the plaintiff's long-standing mental health condition suddenly ceased being *severe* and thereafter only minimally limited her ability to do basic work activities" after February 29, 2008.  Report & Recommendation, Dkt. # 19, at 11.

The court disagrees, however, with the course of action recommended by the magistrate judge.  While there is not substantial evidence in the record to support the ALJ's determination that plaintiff did not have a severe impairment and was not disabled as of February 29, 2008, there is likewise not enough evidence in the record to establish that plaintiff was disabled as of February 29, 2008.  Thus, remand for calculation and payment of benefits is not appropriate. Rather, this matter must be remanded yet again to the Commissioner for further consideration.

On remand, the court finds a consultative evaluation by a psychiatrist to be necessary,[2] given the dearth of information in the Augusta free clinic notes.  "The ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate."  Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986) (citing Walker v. Harris, 642 F.2d

---

[2]  A psychological consultative evaluation was performed in 2006, prior to the period currently at issue.  On remand, the ALJ questioned Dr. Muller about the need for an additional consultative evaluation, but apparently never ordered one:

> ALJ:  Okay.  Do you believe that a consultative evaluation may help identify her current status and be helpful in resolving this issue?
>
> ME:  Certainly, there is no—That may helpful, Your Honor.  Again, the records don't indicate any significant difficulty since [February 29, 2008], but it certainly would give more information in terms of –
>
> ALJ:  Would that be helpful in relating back some of the issues based on her testimony?
>
> ME:  It certainly would give you a picture today of where she is at.  I don't think they would necessarily fill in those blanks for those for that period of time.

(R. 514.)

712, 714 (4th Cir. 1981) and Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)). A consultative examination is warranted when there is an inconsistency in the evidence or "when the evidence as a whole is insufficient to allow us to make a determination or decision" on a claim. 20 C.F.R. §§ 404.1519a, 416.919a. In this case, the Augusta free clinic records are insufficient to allow the Commissioner to make a determination as to plaintiff's claim for benefits after February 29, 2008 and, therefore, prevent the court from engaging in meaningful judicial review. "'In the absence of any psychiatric or psychological evidence to support his position, the ALJ simply does not possess the competency to substitute his views on the severity of [a claimant's] psychiatric problems for that of a trained professional.'" Kersey v. Astrue, 614 F. Supp. 2d 679, 695 (W.D. Va. 2009) (alteration in original) (quoting Grimmett v. Heckler, 607 F. Supp. 502, 503 (S.D. W. Va. 1985)). In this case, remand for a consultative evaluation by a psychiatrist is warranted.[3]

---

[3] The court declines to accept plaintiff's argument that the ALJ failed to follow the proper HALLEX procedure by conducting a full hearing on remand for two reasons. First, the Fourth Circuit has not addressed the meaning and effect of HALLEX, and circuits are split with respect to whether the agency must follow its HALLEX guidelines. Compare Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (holding HALLEX does not have the force and effect of law and declining to review allegations of noncompliance with the manual) with Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000) (holding HALLEX violations can be grounds for relief when a claimant shows prejudice as a result of the violation). See also Melvin v. Astrue, 602 F. Supp. 2d 694, 704 (E.D.N.C. 2009) (citing Moore for the proposition that HALLEX lacks the force of law and rejecting claimant's reliance on the ALJ's alleged failure to comply with HALLEX). Second, it is not entirely clear whether the HALLEX provision upon which plaintiff relies even supports her argument. The relevant portion of HALLEX I-2-8-18 states in full:

> NOTE: The ALJ will not follow the above procedure if the court has held that the claimant is in fact disabled and has remanded the case to the Commissioner to determine the onset of disability or if the ALJ determines that the claimant's appearance is not necessary to issue a favorable decision. In such a case, the ALJ will develop the record and comply with the court's order.

Plaintiff argues that because the court previously determined that plaintiff met the requirements for disability under the Act and remanded the case only for determination of an onset date, the ALJ violated procedure by ordering a hearing. However, the HALLEX note quoted above follows directly after a discussion of the procedures that apply in the event a claimant fails to appear for a hearing ordered on remand. Plaintiff in this case did not fail to appear for her hearing on remand. It is unclear whether this HALLEX note is intended to apply only when a claimant fails to appear for a hearing on remand, or whether it refers to remand procedures generally. In any event, the court does not find resolution of this issue to be essential to adjudicating this case.

**IV.**

For these reasons, the court agrees with the magistrate judge that substantial evidence does not support the ALJ's determination that plaintiff did not have a severe impairment and was not disabled as of February 29, 2008. The court cannot agree, however, that reversal and remand for calculation of benefits is appropriate in this case. Rather, the court finds it necessary to remand this case for a consultative evaluation by a psychiatrist.

To that end, an Order will be entered adopting the report and recommendation of the magistrate judge in part, rejecting it in part, and remanding this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent herewith.

Entered: August 5, 2013

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge